# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### ERIE DIVISION

| | | |
|---|---|---|
| X2Y ATTENUATORS, LLC, | : | CIVIL ACTION NO. 1:17-cv-164 |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| INTEL CORPORATION, | : | |
| Defendant. | : | |

## COMPLAINT FOR PATENT INFRINGEMENT

## INTRODUCTION AND BACKGROUND

1. Currently pending before this Court are two actions filed by X2Y against Intel, collectively asserting the following six patents: United States Patent Nos. 6,738,249 ("the '249 patent"); 7,110,227 ("the '227 patent"); 7,609,500 ("the '500 patent"); 7,733,621 ("the '621 patent"); 7,916,444 ("the '444 patent"), asserted in *X2Y Attenuators, LLC v. Intel Corporation, et al.*, Case 1:11-cv-00117-CB (W.D. Pa.), and United States Patent No. 8,024,241 ("the '241 patent"), asserted in *X2Y Attenuators, LLC v. Intel Corporation, et al.*, Case 1:11-cv-00218-CB (W.D. Pa.).[1] Both actions were stayed pending an ITC investigation and remain stayed. *See* Doc. 7 in 117 case, Doc. 8 in 218 case; *In the Matter of Certain Microprocessors, Components Thereof and Products Containing the Same*, ITC Investigation No. 337-TA-781. The ITC investigation concluded and does not provide any basis for maintaining the stay. X2Y is ready to resume enforcement of the stayed claims against Intel. A motion to lift the stay in both actions will soon be filed.

---

[1] Apple and HP are also named Defendants in both actions.

2.  This case asserts two additional patents, both of which issued following the filing and stay of the pending actions and both of which have also been infringed by Intel: U.S. Patent Nos. 8,587,915 and 9,036,319. Exhibits 1, 2.

3.  Below X2Y provides relevant background regarding the parties and their long running patent dispute before turning to Intel's infringement of the '915 and '319 patents.

## The Parties

4.  Plaintiff X2Y Attenuators, LLC ("X2Y") was founded in 1996 by Tony Anthony and Don Harris to develop energy-conditioning architectures and methods to enhance performance and reduce electromagnetic interference in a variety of products, ranging from commercial and military vehicles to aircraft to satellite radios and noise-cancelling headphones to microprocessor packages and integrated circuits. Since X2Y's founding, the company has been granted more than 70 patents in the U.S. alone, based on the inventions of Mr. Anthony and co-inventors, including his son Bill Anthony. X2Y has entered into license agreements with several manufacturers that make and sell X2Y-branded energy-conditioning products for customers in the United States and around the world. X2Y is a limited liability company with its principal offices located at 2730-B West 21st Street, Erie, Pennsylvania 16506.

5.  Defendant Intel Corporation ("Intel") is the world's leading manufacturer of microprocessors and microprocessor packages, including energy conditioning architectures designed into their dies and packaging substrates. Intel's product families include the Core i3, Core i5, Core i7, and Xeon, each of which includes packages that infringe X2Y's patents. Intel is a corporation and has a place of business located at 2200 Mission College Boulevard, Santa Clara, California, as well as numerous places of business relevant to this case located throughout the country and in the Commonwealth of Pennsylvania, including in this District.

## The Stayed Cases and the ITC Investigation

6.  On May 31, 2011, X2Y filed an action in this District against Intel, Apple Inc., and Hewlett-Packard Company. *X2Y Attenuators, LLC v. Intel Corporation, et al.*, Case 1:11-cv-00117-CB (W.D. Pa.) (the "117 case"). The 117 case asserts X2Y's '249, '227, '500, '621, and '444 patents against Intel's microprocessor packages and the Apple and HP products containing them. Also on May 31, 2011, X2Y filed a Complaint with the International Trade Commission against Intel (and its foreign affiliates), Apple, and HP, asserting the same patents in the 117 case against the same products. An ITC investigation was commenced on June 29, 2011. *In the Matter of Certain Microprocessors, Components Thereof and Products Containing the Same*, ITC Investigation No. 337-TA-781. On September 22, 2011, X2Y filed a second action in this District against Intel, Apple, and HP, asserting its '241 patent, *X2Y Attenuators, LLC v. Intel Corporation, et al.*, Case 1:11-cv-00218-CB (W.D. Pa.) (the "218 case"), and the '241 patent was thereafter added to the ITC Investigation. The district court cases were both stayed pending the resolution of the ITC investigation, Doc. 7 (Stay Order, 8/1/11) in 117 case, Doc. 8 (Stay Order, 10/26/11) in 218, and on June 1, 2012, this Court ordered both cases administratively closed. No party has yet moved to lift the stay.

7.  At the ITC, X2Y streamlined the investigation by narrowing its assertion of patents and patent claims to eventually assert just the '500, '444, and '241 patents at the ITC hearing. In fact, many of the strongest claims of the patents at issue in the ITC investigation were ultimately not asserted because of practical considerations arising from the domestic industry requirement.[2] No assertions of infringement of the '227 patent or '249 patents (or of the

---

[2] To simplify the proceeding, X2Y ultimately asserted claims against Intel that were more similar to those relied upon to meet the domestic industry requirement (i.e., similar to those practiced by X2Y's licensees) than other claims that were also infringed by Intel.

3

not-yet-issued '915 or '319 patents asserted in this case) were presented at the ITC hearing or resolved by the ITC investigation or its appeal.

8. On December 12, 2012, the Administrative Law Judge (ALJ Shaw) issued an Initial Determination in which he construed the claims of the then-asserted patents for the first time in the investigation, adopting Respondents' unitary proposal for a group of "electrode terms" (a subset of disputed claim terms from the '500, '444, and '241 patents that the parties briefed as a group). The ALJ also found non-infringement under that adopted construction. The Commission reviewed and reversed several determinations made by the ALJ in a Notice of Review in Part filed February 15, 2013, and the accompanying Commission Opinion issued on March 4, 2013. However, the Commission did not review or reverse the AJL's construction of the "electrode terms" or the determination that those terms, as construed, supported a finding of non-infringement.

## The Federal Circuit Appeal

9. X2Y appealed to the Federal Circuit, seeking reversal of the construction of the "electrode terms" and resulting finding of infringement, as well as the Commission's unrelated construction of the "perimeter edge" term in the ITC-asserted claims of the '241 patent. Respondents cross-appealed the Commission's finding of no indefiniteness.

10. On July 7, 2014, the Federal Circuit issued an opinion affirming the Commission's construction of the "electrode terms" and the resulting determination of no infringement of the asserted claims of the '500, '444, and '241 patents. *X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, (Fed. Cir. 2014). The court did not address any other issues appealed, although one judge filed a concurring opinion "to address an error in the claim construction approach adopted by the ALJ and the Commission"—the Commission's "fail[ure] to objectively construe the asserted claims before deciding whether the claims were entitled to

priority." *Id.* at 1363-66. X2Y filed a Petition for Panel Rehearing and Rehearing *En Banc*, which was not responded to by Intel and was denied by the court without comment on September 24, 2014. A mandate was then issued to the ITC on October 1, 2014. No mandate was or could have been issued to this Court.

### Moving Forward in this Court

11.  For three reasons, X2Y can and will prevail in this case and in the pending 117 and 218 cases, notwithstanding the ITC decision and its affirmance.

12.  First, the determination of non-infringement by the ITC and the Federal Circuit affirmance do not have preclusive effect and therefore do not in any way bar or estop the further pursuit of the pending 117 and 218 cases much less this case, which asserts new patents never previously litigated. *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 851 F.2d 342, 344 (Fed. Cir. 1988) ("[T]he ITC's determinations regarding patent issues should be given no res judicata or collateral estoppel effect."); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569-1570, n.10 (Fed. Cir. 1996) (addressing issue preclusion: "[D]ecisions of the ITC involving patent issues have no preclusive effect in other forums… Moreover, allowing prior ITC decisions on patent infringement questions to have preclusive effect would potentially deprive the parties of their Seventh Amendment right to a jury trial on the issue of infringement."); *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996) (addressing claim preclusion: "[T]he ITC's prior decision cannot have claim preclusive effect in the district court.").

13.  Second, X2Y can prove that Intel infringes under its own proposed claim construction (i.e., the ITC construction). X2Y did not in fact concede in the ITC investigation or on appeal that no claims of the ITC-asserted patents (or of other X2Y patents, such as those asserted in this case) are infringed by the Intel microprocessor packages accused in the ITC

investigation (or any other Intel packages, such as those accused in this case) under Intel's proposed construction. And no such concession was made in this Court. Moreover, X2Y can and will prove that Intel's microprocessor package do in fact infringe under Intel's own proposed construction.

14. <u>Third</u>, X2Y will demonstrate that the ITC construction is incorrect and, for several of the asserted X2Y patents, inapplicable.

- For example, for the claims of the '241 patent, there is no substantive claim construction analysis by the ITC or Federal Circuit to overcome. On appeal to the Federal Circuit, it was undisputed that the '241 patent does not contain or incorporate the same specification statements as the '500 and '444 patents (i.e., those cited by the ITC and the court). Rather, the sole basis for the Federal Circuit's conclusion that the ITC-asserted claims of the '241 patent should be limited in scope like the claims of the '500 and '444 patents was a purported agreement that, for purposes of that action, all of the claims would rise and fall together. No such agreement was in fact ever made during the ITC investigation or the Federal Circuit appeal. And no such agreement was made in any action before this Court.

- As another example, the '915 and '319 patents asserted in this case are similarly unencumbered by any purported "rising and falling" agreement between the parties and furthermore cannot, based on their intrinsic records, be construed to be limited to the ITC construction of the "electrode terms." The '915 patent is a continuation of the '241 patent and similarly does not contain or incorporate any disclaiming or disavowing specification statements regarding any of its claim terms. Moreover, while the '319 patent does incorporate by reference earlier patents in the family that contain some of the specification statements cited by the ITC and the Federal Circuit, any disclaimer or disavowal represented by those earlier statements was clearly rescinded during the prosecution of the '319 patent.[3]

---

[3] The '227 patent, which was not construed in the ITC investigation, also has a unique prosecution history—one that results from Intel's attempt to not only copy but patent X2Y's prior invention and that merits construing its claims differently from other patents in its family and rejecting any attempt to apply the ITC construction to this patent.

6

## INFRINGEMENT OF THE '915 AND '319 PATENTS

### Jurisdiction and Venue

15. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271 and 281, *et seq.* The Court has original jurisdiction over this patent infringement action under 28 U.S.C §§ 1331 and 1338(a).

16. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Intel has committed acts of infringement within this district and has a regular and established place of business within the district, including at Intel Labs Pittsburgh. Furthermore, this district is the most convenient and the most appropriate venue for the trial of this case under the private and public interest factors. *Jumara v. State Farm*, 55 F.3d 873 (3d Cir. 1995).

### Count I
### Infringement of the '915 patent

17. X2Y incorporates by reference each of the allegations of the foregoing paragraphs of this Complaint and further alleges as follows.

18. On August 1, 2011, X2Y filed U.S. Patent Application No. 13/195,495. The application was published as US 2012/0023742 A1 on February 2, 2012, and was known to Intel no later than that date as a result of Intel's continuous research and investigation of the X2Y patent portfolio, which began no later than in 1999, when the parties first met. On November 19, 2013, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,587,915, titled "Arrangement for Energy Conditioning," naming X2Y founder Tony Anthony and his son Bill Anthony as inventors. The '915 patent cites more than 1,200 references on its face, including references relied upon as prior art by Intel in the ITC investigation. In fact, the expert reports of Intel's invalidity experts Dr. Subramanian, Dr. Shanfield, and Dr. Andreas Cangellaris were

submitted to the Patent Office under seal during the prosecution of the '915 patent and were considered by the Examiner. The patent was granted, issuing with 132 claims.

19. X2Y owns the '915 patent and owns all rights to enforce the patent and to pursue and collect damages for infringement of the patent from any and all infringers, including Intel.

20. Each claim of the '915 patent is patent eligible, valid, and enforceable. The claims of the '915 patent purport to provide, and do provide, technical solutions for solving technical problems associated with electromagnetic interference. The claims recite novel, unconventional, and nonobvious methods and physical arrangements and structures for improving energy conditioning, electromagnetic compatibility, and the delivery of power and data to and within electronic devices.

21. Intel has willfully infringed the '915 patent and has done so on each day of the patent's term. Intel has directly infringed the '915 patent by performing the method of claim 103, in violation of Section 271(a), by making the microprocessor dies and packaging substrates of its Core i3, Core i5, Core i7, and Xeon microprocessor packages. As an example, Intel has performed the method of claim 103 by electrically coupling the first, third, and fifth metal layers of the Xeon E5-1620v3's packaging substrate, electrically isolating data signal traces of the second and fourth layers from each other and from the first, third, and fifth layers, and superposing those signal traces of the second and fourth layers as recited by the claim and resulting in an arrangement for energy conditioning. The foregoing illustrative allegations are further presented in the below chart:

| '915 claim 103 | Intel Xeon E5-1620v3 package |
|---|---|
| [preamble] A method for making an arrangement for energy conditioning, said method comprising: | Intel itself performs the method of claim 103 and also directs and controls, under a contractual and agency relationship, the performance of this method by subsidiaries, affiliates, and contractors. An example of the arrangement for energy conditioning made by Intel pursuant to the method of claim 103 is the Intel Xeon E5-1620v3 microprocessor package and its packaging substrate. |
| [a] electrically coupling a shielding upper electrode area of an upper electrode to a shielding center electrode area of a center electrode; | Intel electrically couples, and directs and controls the electrical coupling of, a shielding upper electrode area of the first metal layer of the Xeon E5-1620v3 packaging substrate to a shielding center electrode area of the third metal layer of the Xeon E5-1620v3 packaging substrate using vias. |
| [b] electrically coupling said shielding center electrode area to a shielding lower electrode area of a lower electrode; | Intel electrically couples, and directs and controls the electrical coupling of, the center electrode area of the third metal layer of the Xeon E5-1620v3 packaging substrate to a shielding lower electrode area of the fifth metal layer of the Xeon E5-1620v3 packaging substrate using vias. |
| [c] electrically isolating a first electrode from said shielding upper electrode area, said shielding center electrode area and said shielding lower electrode area; | Intel electrically isolates, and directs and controls the electrical isolation of, at least one data signal trace of the second metal layer of the Xeon E5-1620v3 packaging substrate from each of the shielding upper, center, and lower electrode areas of the first, third, and fifth metal layers of the Xeon E5-1620v3 packaging substrate. |
| [d] electrically isolating a second electrode from said shielding upper electrode area, said shielding center electrode area and said shielding lower electrode area; | Intel electrically isolates, and directs and controls the electrical isolation of, at least one data signal trace of the fourth metal layer of the Xeon E5-1620v3 packaging substrate from each of the shielding upper, center, and lower electrode areas of the first, third, and fifth metal layers of the Xeon E5-1620v3 packaging substrate. |

Case 3:18-cv-01394-HZ    Document 1    Filed 06/22/17    Page 10 of 16

| '915 claim 103 | Intel Xeon E5-1620v3 package |
| --- | --- |
| [e] electrically isolating said first electrode from said second electrode; and | Intel electrically isolates, and directs and controls the electrical isolation of, the data signal trace of the second metal layer of the Xeon E5-1620v3 packaging substrate from the data signal trace of the fourth metal layer using the first, third, and fifth metal layers. |
| [f] superposing with one another a bottom first superposed area of a first superposed area of a first shielded surface area of said first electrode and a bottom second superposed area of a second superposed area of a second shielded surface area of said second electrode. | Intel superposes, and directs and controls the superposing of, the following with each other: a bottom first superposed area of a first shielded surface area of the data signal trace of the second metal layer of the Xeon E5-1620v3 packaging substrate and a bottom second superposed area of a second shielded surface area of the data signal trace of the fourth metal layer. |

22. Any contention by Intel that it does not itself perform the recited steps of claim 103 because its subsidiaries, affiliates, or contractors do so will not avoid a finding of Intel's liability for direct infringement because any such additional entity is controlled and directed by Intel, under contract and under an agency relationship. Intel has also directly infringed the '915 patent in violation of Section 271(g) because Intel imports, offers to sell, sells, and uses, in the United States, microprocessor dies and packaging substrates that are made by the process of claim 103 of the '915 patent, including the Xeon E5-1620v3 package.[4]

23. Intel's infringement has been willful and egregious during the entire term of the '915 patent. During that term, Intel has not only been aware of the '915's existence and its claims but aware that it is infringing the patent, under any potential claim construction that will

---

[4] X2Y reserves the right to assert additional claims of the '915 patent. Method claim 103 is asserted currently because, in addition to being infringed by Intel, claim 103 is indisputably not subject to the marking statute. Additional, non-method claims of the '915 patent are also not subject to the marking statute because no licensee of X2Y has a license to the '915 patent or has made a product that practices such claims under a license from X2Y. Upon establishing in this case that the non-method claims of the '915 patent are not subject to the marking statute—either by motion practice or stipulation—X2Y may assert such claims against Intel.

be proposed. Intel has furthermore been aware that the patent is patent-eligible, novel, and non-obvious, and not otherwise invalid or unenforceable, including in light of the references, contentions, and expert opinions Intel asserted and relied upon during the ITC investigation. Intel's initial infringement of the '915 patent was also not accidental—it resulted from a deliberate decision to copy X2Y's patented technology starting no later than in 1999 when the parties first met at Intel's request, under NDA.

24. X2Y has been damaged by Intel's infringement of the '915 patent and is entitled to reasonable royalty damages and enhanced damages due to Intel's willful infringement.

## Count II
## Infringement of the '319 patent

25. X2Y incorporates by reference each of the allegations of the foregoing paragraphs of this Complaint and further alleges as follows.

26. On August 1, 2011, X2Y filed U.S. Patent Application No. 13/195,476. The application was published as US 2012/0023741 A1 on February 2, 2012, and as US 2014/0298647 A2 on October 9, 2014. The filed application was known to Intel as of the date of its filing or shortly thereafter, as a result of Intel's continuous research and investigation of the X2Y patent portfolio, which began no later than in 1999, when the parties first met. The published applications were similarly known to Intel as of the date of their publication. On May 19, 2015, the U.S. Patent and Trademark Office issued U.S. Patent No. 9,036,319, titled "Arrangement for Energy Conditioning," naming X2Y founder Tony Anthony and his son Bill Anthony as inventors. The '319 patent cites more than 1,300 references on its face, including references relied upon as prior art by Intel in the ITC investigation. The expert reports of Intel's invalidity experts Dr. Subramanian, Dr. Shanfield, and Dr. Andreas Cangellaris in the ITC investigation were also submitted to the Patent Office under seal during the prosecution of the

'319 patent and were considered by the Examiner. The patent was granted, issuing with 250 claims.

27. X2Y owns the '319 patent and owns all rights to enforce the patent and to pursue and collect damages for infringement of the patent from any and all infringers, including Intel.

28. Each claim of the '319 patent is patent eligible, valid, and enforceable. The claims of the '319 patent purport to provide, and do provide, technical solutions for solving technical problems associated with electromagnetic interference. The claims recite novel, unconventional, and nonobvious methods and physical arrangements and structures for improving energy conditioning, electromagnetic compatibility, and the delivery of power and data to and within electronic devices.

29. Intel has willfully infringed the '319 patent and done so on each day of the patent's term. Intel has directly infringed the '319 patent by performing the method of claim 1, in violation of Section 271(a), by making the microprocessor dies and substrates of its Core i3, Core i5, Core i7, and Xeon microprocessor packages. As an example, Intel has performed the method of claim 1 by electrically isolating the first, third, and fifth metal layers of the Xeon E5-1620v3's packaging substrate from smaller in size signal traces on the second and fourth layers that are superposed, electrically coupling the first, third, and fifth layers to each other, and horizontally separating perimeter edge portions of previously mentioned signal traces on the second and fourth layers as recited by the claim and resulting in a conductive pathway arrangement. The foregoing illustrative allegations are further presented in the below chart:

| '319 claim 1 | Intel Xeon E5-1620v3 package |
|---|---|
| A method for making a conductive pathway arrangement, comprising: | Intel itself performs the method of claim 1 and also directs and controls, under a contractual and agency relationship, the performance of this method by subsidiaries, affiliates, and contractors. An example of the conductive pathway arrangement made by Intel pursuant to the method of claim 1 is the Intel Xeon E5-1620v3 microprocessor package and its packaging substrate. |
| [a] electrically isolating an upper pathway, a center pathway and a lower pathway from a first pathway and a second pathway; | Intel electrically isolates, and directs and controls the electrical isolation of, the first, third, and fifth metal layers of the Xeon E5-1620v3 packaging substrate from data signal traces of the second and fourth metal layers. |
| [b] separating by a first horizontal distance a first and a second perimeter edge portion of a bottom surface area of a superposed first pathway shielded area of a first pathway shielded area of said first pathway; | Intel horizontally separates, and directs and controls the horizontal separation of, a first and second perimeter edge portion of a bottom surface area of at least one data signal trace of the second metal layer of the Xeon E5-1620v3 packaging substrate that is superposed. That bottom surface area is shielded by portions of the ground planes of the first and third metal layers. |
| [c] separating by a second horizontal distance a first and a second perimeter edge portion of a top surface area of a superposed second pathway shielded area of a second pathway shielded area of said second pathway; | Intel horizontally separates, and directs and controls the horizontal separation of, a first and second perimeter edge portion of a top surface area of at least one data signal trace of the fourth metal layer of the Xeon E5-1620v3 packaging substrate that is superposed. That top surface area is shielded by portions of the ground planes of the third and fifth metal layers. |
| [d] electrically coupling [i] an upper pathway shielding area that is larger in size than either said superposed first pathway shielded area or said superposed second pathway shielded area to [ii] a center pathway shielding area that is larger in size than either said superposed first pathway shielded area or said superposed second pathway shielded area; | Intel electrically couples, and directs and controls the electrical coupling of, [i] a shielding area of the first metal layer of the Xeon E5-1620v3 packaging substrate that is larger than the superposed shielded area of the data signal trace of the second metal layer or the superposed shielded area of the data signal trace of the fourth metal layer to [ii] a shielding area of the third metal layer that is |

13

| '319 claim 1 | Intel Xeon E5-1620v3 package |
|---|---|
| | larger in size that the superposed shielded area of the data signal trace of the second metal layer or the superposed shielded area of the data signal trace of the fourth metal layer using vias. |
| [e] electrically coupling said center pathway shielding area to a lower pathway shielding area that is larger in size than either said superposed first pathway shielded area or said superposed second pathway shielded area; and | Intel electrically, and directs and controls the electrical coupling of, the shielding area of the third metal layer of the Xeon E5-1620v3 packaging substrate to a shielding area of the fifth metal layer that is larger than the superposed shielded area of the data signal trace of the second metal layer or the superposed shielded area of the data signal trace of the fourth metal layer using vias. |
| [f] superposing with one another a top surface area of said superposed first pathway shielded area, said bottom surface area of said superposed first pathway shielded area, said top surface area of said superposed second pathway shielded area and a bottom surface area of said super posed second pathway shielded area. | Intel superposes, and directs and controls the superposing of, the following with each other: a top surface area of the shielded and superposed data signal trace of the second metal layer of the Xeon E5-1620v3, the bottom surface area of that data signal trace (of the second metal layer), the top surface area of the shielded and superposed data signal trace of the fourth metal layer, and a bottom surface area of that signal data trace (of the fourth metal layer). |

30.     Any contention by Intel that it does not itself perform the recited steps of claim 1 because its subsidiaries, affiliates, or contractors do so will not avoid a finding of Intel's liability for direct infringement because any such additional entity is controlled and directed by Intel, under contract and under an agency relationship. Intel has also directly infringed the '319 patent in violation of Section 271(g) because Intel imports, offers to sell, sells, and uses, in the United

States, microprocessor dies and packaging substrates that are made by the process of claim 1 of the '319 patent, including the Xeon E5-1620v3 package.[5]

31. Intel's infringement has been willful and egregious during the entire term of the '319 patent. During that term, Intel has not only been aware of the '319 patent's existence and its claims but aware that it is infringing the patent, under any potential claim construction that will be proposed. Intel has furthermore been aware and that the patent is patent-eligible, novel, and non-obvious, and not otherwise invalid or unenforceable, including in light of the references, contentions, and expert opinions Intel asserted and relied upon during the ITC investigation. Intel's initial infringement of the '319 patent was also not accidental—it resulted from a deliberate decision to copy X2Y's patented technology starting no later than in 1999 when the parties first met at Intel's request, under NDA.

32. X2Y has been damaged by Intel's infringement of the '319 patent and is entitled to reasonable royalty damages and enhanced damages due to Intel's willful infringement.

### Jury Demand

33. X2Y demands a trial by jury of the above claims for infringement by Intel and of all other issues and defenses triable by a jury.

### Relief Requested

Plaintiff X2Y prays for the following relief:

A. A judgment in favor of X2Y that Intel has infringed the asserted '915 and '319 patents and that the patents are valid, enforceable, and patent-eligible;

---

[5] X2Y reserves the right to assert additional claims of the '319 patent. Method claim 1 is asserted currently because, in addition to being infringed by Intel, claim 1 is indisputably not subject to the marking statute. Additional, non-method claims of the '319 patent are also not subject to the marking statute because no licensee of X2Y has a license to the '319 patent or has made a product that practices such claims under a license from X2Y. Upon establishing in this case that the non-method claims of the '319 patent are not subject to the marking statute—either by motion practice or stipulation—X2Y may assert such claims against Intel.

B.  A judgment and order requiring Intel to pay X2Y compensatory damages, costs, expenses, and pre- and post-judgment interest for Intel's infringement of the asserted patents, as provided under 35 U.S.C. § 284;

C.  A judgment that Intel has willfully infringed the '915 and '319 patents and that X2Y is entitled to enhanced damages as a result of such willful infringement.

D.  A finding that this case is exceptional under 35 U.S.C. § 285, at minimum due to Intel's willful infringement, and an award of X2Y's reasonable attorney's fees and costs; and

E.  Any and all other relief to which Plaintiff X2Y may be entitled.

Dated: June 22, 2017

Respectfully submitted,

PICADIO SNEATH MILLER & NORTON, P.C.

By: */s/ Henry M. Sneath*
   Henry M. Sneath, Esquire
   PA I.D. No. 40559
   hsneath@psmn.com
   Robert L. Wagner, Esquire
   PA I.D. No. 308499
   rwagner@psmn.com
   Four Gateway Center
   444 Liberty Avenue, Suite 1105
   Pittsburgh, PA  15222
   Telephone: 412.288.4000
   Facsimile:   412.288.2405

   John Jeffrey Eichmann, Esquire
   jeff@dovel.com
   CA State Bar No. 227472
   (Admission to W.D. Pa. pending)
   Dovel & Luner LLP
   201 Santa Monica Boulevard, Suite 600
   Santa Monica, CA  90401
   Telephone: 310.656.7066
   Facsimile:   310.656.7069

   *(Counsel for Plaintiff X2& Attenuators, LLC)*